UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
2004 SEP -1 P 4: 15

U. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

MICHAEL A. STEVENSON,
Trustee,

        Plaintiff,

    v.

H. HICKS AND COMPANY, INC.,
d/b/a HICKS CONSTRUCTION
COMPANY,

        Defendant.

_____/

CASE NO. 03-CV-70927-DT
JUDGE BERNARD A. FRIEDMAN
MAGISTRATE JUDGE R. STEVEN WHALEN

## REPORT AND RECOMMENDATION

| | | | |
|---|---|---|---|---|
| I. | | RECOMMENDATION | ... | 2 |
| II. | | REPORT | ... | 2 |
| | A. | *Background* | ... | 2 |
| | B. | *Legal Standard* | ... | 3 |
| | C. | *Avoidance of the Transfer* | ... | 6 |
| | | 1. *Transfer of an Interest of the Debtor* | ... | 7 |
| | |   a. No Entireties Property Is Involved | ... | 9 |
| | |   b. Trustee May Avoid Transfer of Entireties Property | ... | 11 |
| | | 2. *Time of the Transfer* | ... | 13 |
| | | 3. *Fraudulent Transfer* | ... | 13 |
| | |   a. Actual Fraud | ... | 13 |
| | |   b. Constructive Fraud | ... | 15 |
| | D. | *Defendant's Liability* | ... | 25 |
| | E. | *Narrowing the Issues under Rule 56(d)* | ... | 29 |
| | F. | *Conclusion* | ... | 30 |
| III. | | NOTICE TO PARTIES REGARDING OBJECTIONS | ... | 31 |

I.      RECOMMENDATION: The Court should deny plaintiff's motion for summary judgment. However, because plaintiff has showed that there are no genuine issues of material fact with respect to several elements of his claim, the Court should enter an order narrowing the issues for trial in accordance with FED. R. CIV. P. 56(d).

II.     REPORT:

A.      *Background*

Plaintiff Michael A. Stevenson, Trustee of the bankruptcy estate of George D. Cutler ("Debtor"), brings this adversary action against defendant H. Hicks & Company, Inc., doing business as Hicks Construction Company, seeking to avoid and recover $100,000.00 which plaintiff alleges amounted to a fraudulent transfer by Debtor to defendant.

Debtor is the president and sole owner of Professional Engineers & Designers ("PED"), a building renovation corporation. Debtor's son, Gerald Cutler, is the president and sole owner of Professional Designers & Developers, LLC ("PDD"). On May 7, 2001, Debtor and his wife refinanced their home. They gave a mortgage on their home to BNC Mortgage in the amount of $324,000.00. After paying closing costs and the balance on the existing mortgage, the proceeds from the transaction were distributed as follows: $100,000.00 to defendant, allegedly for a debt owed to defendant by PED; $27,589.37 to PDD for a debt owed to it by PED; and $2,000.00 to Debtor's wife. *See In re Cutler*, 291 B.R. 718, 721-22 (Bankr. E.D. Mich. 2003); Pl.'s Mot. for Summ. J., Ex. 3, Aff. of George D. Cutler, ¶ 2 [herinafter "Cutler Aff."]; Ex. 4.

On November 30, 2001, Debtor filed a petition for voluntary bankruptcy under Chapter 7 of the Bankruptcy Code, and plaintiff was subsequently appointed trustee of the bankruptcy estate. On January 23, 2003, plaintiff filed this adversary proceeding against defendant in the

2

Bankruptcy Court. Plaintiff seeks to avoid the $100,000.00 transfer from Debtor to defendant as a fraudulent transfer pursuant to 11 U.S.C. §§ 548(a)(1), 550, and MICH. COMP. LAWS §§ 566.34(1)(a), (b), 566.35(1).[1] On May 20, 2003, the reference of this matter to the Bankruptcy Court was withdrawn. Plaintiff filed an amended complaint in this Court on September 29, 2003, and defendant filed an answer on November 7, 2003.

On February 26, 2004, plaintiff filed this motion for summary judgment. Plaintiff argues that there is no genuine issue of material fact with respect to whether the transfer from Debtor to defendant was fraudulent and hence avoidable under federal and state law, and that there is no genuine issue of material fact with respect to plaintiff's entitlement to recover the money paid from defendant. Defendant filed a response on April 12, 2004, arguing that there remain genuine issues of material fact with respect to a number of issues relevant to plaintiff's claims. Specifically, defendant argues that there remain genuine issues of material fact with respect to: (1) Debtor's interest in the property which was the subject of the allegedly fraudulent conveyance; (2) whether defendant is liable for the transfer if it is avoided; and (3) whether the transfer was a fraudulent one under § 548 and Michigan law. Plaintiff filed a reply on April 19, 2004. For the reasons that follow, the Court should deny plaintiff's motion for summary judgment, but narrow the issues for trial pursuant to Rule 56(d).

B.  *Legal Standard*

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party

---

[1]Plaintiff also filed an adversary proceeding in the Bankruptcy Court against Debtor, seeking to deny Debtor's discharge pursuant to 11 U.S.C. § 727, based on part on the fraudulent conveyance from Debtor to defendant. On April 23, 2003, the Bankruptcy Court denied Debtor's discharge based in part on this transfer. *See Cialer*, 291 B.R. at 722-23.

3

seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory

judgment may . . . move with or without supporting affidavits for a summary judgment in the

party's favor upon all or any part thereof." FED. R. CIV. P. 56(a). The rule further provides that

"[t]he judgment sought shall be entered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue of material fact and that the moving party is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(c).

> A fact is 'material' and precludes grant of summary judgment if proof of that fact
> would have [the] effect of establishing or refuting one of the essential elements
> of the cause of action or defense asserted by the parties, and would necessarily
> effect [the] application of appropriate principle[s] of law to the rights and
> obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY

881 (6th ed. 1979)). The Court must view the evidence in a light most favorable to the non-

movant as well as draw all reasonable inferences in the non-movant's favor. *See United States

v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-

11 (6th Cir. 1984).

The movant bears the burden of demonstrating the absence of all genuine issues of

material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). Generally,

the moving party need not produce evidence showing the absence of a genuine issue of

material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that

is, pointing out to the district court -- that there is an absence of evidence to support the non-

moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving

party discharges that burden, the burden shifts to the non-moving party to set forth specific

4

facts showing a genuine triable issue. *See* FED. R. CIV. P. 56(e); *Gregg*, 801 F.2d at 861.

However where, as here, "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997); *see also, United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992). In other words, in such a case the movant "must satisfy both the initial burden of production on the summary judgment motion–by showing that no genuine dispute exists as to any material fact–and the ultimate burden of persuasion on the claim–by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1991). "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

Once the burden shifts to the non-movant to demonstrate the existence of a genuine issue of material fact, the non-movant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non moving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

5

*Id.* at 249-50. (citations omitted); *see Celotex Corp.,* 477 U.S. at 322-23; *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  The standard for summary

judgment mirrors the standard for a directed verdict under FED. R. CIV. P. 50(a).  *Anderson,*

477 U.S. at 250.  Consequently, a non-movant must do more than raise some doubt as to the

existence of a fact; the non-movant must produce evidence that would be sufficient to require

submission to the jury of the dispute over the fact.

C.    *Avoidance of the Transfer*

Plaintiff seeks to avoid the $100,000.00 transfer from Debtor to defendant pursuant to

§ 548 of the Code, which in relevant part provides:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1).  Thus, to exercise his avoidance powers under § 548, the trustee must

establish that: (1) the debtor transferred an interest of the debtor in property; (2) the transfer

occurred within the one-year period prior to the filing of the bankruptcy petition; and (3) the

6

transfer was "fraudulent," *i.e.*, the transfer meets the requirements of either subparagraph (A) or subparagraph (B) of § 548(a)(1). *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994); *In re GWI PCS 1 Inc.*, 230 F.3d 788, 805 (5th Cir. 2000).[2]

1.    *Transfer of an Interest of the Debtor*

There is no question that there was a transfer of $100,000.00 to defendant. Debtor avers in his affidavit that the money from the refinancing proceeds was distributed to defendant, *see* Cutler Aff., ¶ 2, plaintiff has provided a copy of the check from the title company to defendant, *see* Pl.'s Mot. for Summ. J., Ex. 4, and defendant has admitted that it received and negotiated the check, *see id.*, Ex. 5, at 3 (defendant's responses to plaintiff's requests for admissions). Rather, the question here is whether the $100,000.00 which was transferred constitutes "an interest of the debtor in property" to which § 548(a)(1) applies.

"While the Bankruptcy Code does not define 'property of the debtor,' the Supreme Court has noted that the term is 'best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.'" *In re Tri-City Turf Club, Inc.*, 323 F.3d 439, 443 (6th Cir. 2003) (quoting *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58-59 (1990)).[3]   The phrase is "coextensive with

---

[2] Pursuant to 11 U.S.C. § 544, plaintiff also seeks to avoid the transfer under Michigan fraudulent conveyance law, specifically MICH. COMP. LAWS §§ 566.34, .35. These sections are an enactment of the Uniform Fraudulent Transfers Act (UFTA), and substantially mirror the provisions of § 548. Thus, the following discussion, which analyzes only § 548, applies equally to plaintiff's claims under Michigan law. *See In re Viscount Air Servs., Inc.*, 232 B.R. 416, 434 (Bankr. D. Ariz. 1998) (citing cases) (noting that courts have consistently interpreted the UFTA in accord with § 548); *In re Solomon*, 300 B.R. 57, 63 (Bankr. N.D. Okla.), *aff'd*, 299 B.R. 626, 633 (B.A.P. 10th Cir. 2003); *In re Cohen*, 199 B.R. 709, 716 (B.A.P. 9th Cir. 1996).

[3] *Tri-City Turf Club* and *Begier* both construe the identical phrase as used in the preference avoidance provision of the Code, 11 U.S.C. § 547. However, because "[t]he normal rule of statutory

7

'interests of the debtor in property' as that term is used in 11 U.S.C. § 541(a)(1)," *Begier*, 496 U.S. at 59 n.3, and thus "[i]n defining 'an interest of the debtor in property,' the [court] looks to 11 U.S.C. § 541(a)(1), which provides that property of the estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Tri-City Turf Club*, 323 F.3d at 443 (quoting *In re Cannon*, 277 F.3d 838, 849 (6th Cir. 2002). Further, "in the absence of controlling federal bankruptcy law, the substantive nature of the property interest held by a bankrupt and its creditors is defined by state law." *Id.*; *see also, Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) (under the Code, "'property' and 'interests in property' are creatures of state law").

Defendant argues that genuine issues of material fact remain with respect to the extent of Debtor's interest in the $100,000.00 which was transferred. Defendant argues that the home upon which Debtor and his wife refinanced is held as a tenancy by the entireties under Michigan law. Because such entireties property is exempt from the reach of most creditors under Michigan law, defendant argues, the property is exempt pursuant to 11 U.S.C. § 522(b)(2)(B). Therefore, defendant contends, "the amount [to which the estate would be entitled] would have been limited to only the Debtor's interest in the entireties property (an amount which has yet to be determined) and that amount would only be subject to valid joint

---

construction assumes that identical words used in different parts of the same act are intended to have the same meaning," *Sorenson v Secretary of Treasury*, 475 U.S. 851, 860 (1986) (internal quotation omitted); *see also, Gustafson v A lloyd Co, Inc.*, 513 U.S. 561, 570 (1995), cases construing the phrase under § 547 are equally applicable in the context of an action under § 548. *See Barr, Stearns Sec. Corp. v Gredd*, 275 B.R. 190, 194 (S.D.N.Y. 2002) (citing cases, including *In re Cannon*, 277 F.3d 838, 848-49 (6th Cir. 2002).

Further, although the version of § 547 that the Court considered in *Begier* dealt with "property of the debtor" as opposed to "an interest of the debtor in property," the Court noted the 1984 amendments which substituted the latter phrase for the former in § 547 and § 548 and concluded that the phrases are coextensive. *See Begier*, 496 U.S. at 59 n.3.

claims against George and Rose Cutler that could be reduced to a judgment." Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 8. The Defendant's argument is misplaced, for two reasons.

### a. No Entireties Property is Involved

First, no entireties property was transferred. Importantly, Debtor did not transfer any interest in the real property which was the subject of entireties estate. Rather, Debtor and his wife transferred money derived from the proceeds of the refinancing of the entireties property. The question, therefore, is whether these proceeds themselves constitute entireties property. I conclude that they do not, and thus the proceeds are properly characterized as part of the bankruptcy estate, for two reasons.

First, the proceeds of the refinancing transaction are not properly characterized as entireties property under state law. Michigan follows the general common law rule that, absent a specific statutory authorization, an estate by the entireties is limited to real property and may not be established in personal property. *See Jahn v. Regan*, 584 F. Supp. 399, 409 (E.D. Mich. 1984) (Pratt, J.); *Scholten v. Scholten*, 238 Mich. 679, 683, 214 N.W.2d 320, 322 (1927). The proceeds, when reduced to money, constitute personal property, and thus the proceeds may not be held as a tenancy by the entireties. *See In re Wickstrom*, 113 B.R. 339, 349 (Bankr. W.D. Mich. 1990); *In re Jackson*, 92 B.R. 211, 213-14 (W.D. Mich. 1988); 4 DAVID A. THOMAS, ED., THOMPSON ON REAL PROPERTY § 33.08(a), at 156 (2d ed. 2000).[4]

---

[4] In *Muskegon Lumber & Fuel Co. v. Johnson*, 338 Mich. 655, 62 N.W.2d 619 (1954), the court held that the proceeds of a sale of entireties property did constitute entireties property. In that case, however, it was clear that the intent of the parties was to reinvest the proceeds in a new entireties property, and the parties issued checks for the purchase of additional real property within 24 hours of receiving the

Second, although entireties property is generally not subject to the claims of one
spouse's creditors under state law, the tenancy by the entireties may be severed by the joint
action of the spouses. Here, Debtor and his wife jointly distributed the proceeds from the
refinancing. At that point in time, "the entireties estates were thereby terminated and the
Debtor and his spouse no longer held any remaining interest in the" proceeds. *Wickstrom*,
113 B.R. at 346; *see also, In re Sanders*, 213 B.R. 324, 332 (Bankr. M.D. Tenn. 1997).
Defendant's argument that the transfer did not harm creditors because, had the transfer of the
proceeds not occurred Debtor's creditors could not have recovered from this property misses
the mark. "The [d]efendant['s] argument is based upon hypothetical facts that do not exist.
Conveyances of property have legal ramifications. This court therefore must analyze the law
in accordance with what happened rather than what might have happened." *Wickstrom*, 113
B.R. at 346. Accordingly, I conclude that the proceeds which were transferred were not
entireties property, and thus constitute an "interest of the debtor in property" subject to
plaintiff's § 548 avoidance powers.

### b. Trustee May Avoid Transfer of Entireties Property

Second, even if entireties property were at issue here, I nonetheless conclude that
plaintiff may avoid a transfer of entireties property under § 548. As explained above, an
"interest of the debtor in property" under § 548 is coextensive with the definition of property

---

proceeds. *See id.* at 657-58, 62 N.W.2d at 621. Based on these facts, the courts that have considered
*Muskegon Lumber* have held not that it establishes an entireties estate in proceeds from the sale of
entireties property, but that it recognizes a "limited exception" to the general rule "when the proceeds
are to be reinvested in other similar entireties property within a reasonable period of time." *Wickstrom*,
113 B.R. at 349; *see also, Jackson*, 92 B.R. at 213-14. Here, there is no evidence that Debtor and his wife
intended to reinvest the proceeds in new entireties property, and thus this exception is inapplicable here.

10

in § 541. And, although earlier versions of the bankruptcy statutes were interpreted differently, under the current version of the Code "[i]t is now well established law that [§ 541(a)] brings entireties property into the bankruptcy estate." *In re Grosslight*, 757 F.2d 773, 775 (6th Cir. 1985); *see also, In re Cordova*, 73 F.3d 38, 40 (4th Cir. 1996); *In re Arrango*, 992 F.2d 611, 613-14 (6th Cir. 1993); *Wickstrom*, 113 B.R. at 347; *In re Ford*, 3 B.R. 559, 568-70 (Banrk. D. Md. 1980). While such property may ultimately be exempted under § 522, at the outset of the case the property is part of the bankruptcy estate. Because exemptions under § 522 are personal to the debtor and may be raised only for the debtor's benefit, *see In re Noblit*, 72 F.3d 757, 758 (9th Cir. 1995), it is equally "well-established that a bankruptcy trustee can avoid the debtor's transfer of exempt property." *In re Pearce*, 236 B.R. 261, 267 (Bankr. C.D. Ill. 1999); *see also, Tavenner v. Smoot*, 257 F.3d 401, 406 (4th Cir. 2001); *Noblit*, 72 F.3d at 758-59; *In re Hope*, 231 B.R. 403, 412-13 & n.12 (Bankr. D.D.C. 1999) (citing cases); *Wickstrom*, 113 B.R. at 347.

Defendant argues for a contrary rule, citing to a case adopting the so-called "no harm, no foul" approach. These cases hold "that the trustee cannot avoid the transfer [of exempt property] because, absent the transfer, creditors could not have reached the property, and thus the transfer did not harm them in any way." *Tavenner*, 257 F.3d at 406. As the *Tavenner* court noted, the more recent trend by the courts has been to reject this approach because the 1978 revisions to the Code make it clear that all property, including exempt property, is part of the bankruptcy estate at the time the petition is filed. *See id.; see also*, 11 U.S.C. § 541(a). Further, as that court explained, this approach is more consistent with the Code for two reasons:

11

First, § 522(g) of the Bankruptcy Code apparently anticipates this result. *See* 11 U.S.C. § 522(g) (1994). That statute permits the debtor to exempt property recovered by the trustee under certain circumstances, namely if the debtor could have exempted such property had it not been transferred and if the transfer was involuntary and the debtor did not attempt to conceal the property. *See id.* Section 522(g) is, thus, premised on the notion that a bankruptcy trustee can avoid the transfer of exemptible property and recover the property.

Second, as the *Wickstrom* court explained, the "no harm, no foul" approach is misguided. Under a statutory scheme in which all property is presumed to be part of the bankruptcy estate, and no property is exempt until such time as the debtor claims an exemption for it, creditors *can* be harmed by transfers of potentially exempt property because it is not a foregone conclusion that such property will be exempt from the estate. Potentially exempt property can be used to satisfy the demands of the creditors if the debtor never claims the exemption. Thus, the so-called "no harm, no foul" approach is inconsistent with the Bankruptcy Code.

*Tavenner*, 257 F.3d at 406-07; *see also*, *Wickstrom*, 113 B.R. at 347-52.

For the foregoing reasons, I conclude that the $100,000.00 transfer was a transfer of an "interest of the debtor in property" under § 548 because (a) the property at issue is not entireties property, and (b) even if it is entireties property, it is nonetheless subject to plaintiff's avoidance powers under § 548.[5]

### 2. Time of the Transfer

There is no dispute that the transfer at issue here occurred within the one year period preceding the filing of Debtor's bankruptcy petition. The transfer occurred on May 7, 2001, and Debtor filed his bankruptcy petition less than seven months later, on November 30, 2001. Thus, this element of § 548 is satisfied. *See In re Fox Bean Co., Inc.*, 287 B.R. 270, 281

---

[5]In an interesting and thought-provoking opinion, Bankruptcy Judge Hughes recently held that § 541, because it transfers entireties property from a debtor-spouse to the bankruptcy estate, severs the entireties tenancy by operation of law. *See In re Spears*, 308 B.R. 793, 801-19 (Bankr. W.D. Mich. 2004). *But see, Ford*, 3 B.R. at 570-71 (rejecting this argument). Because the property at issue here is subject to plaintiff's avoidance powers from the reasons explained above, the Court need not delve into this issue.

(Bankr. D. Idaho 2002); *In re Suburban Motor Freight, Inc.*, 124 B.R. 984, 1001 (Bankr. S.D. Ohio 1991).

### 3.    *Fraudulent Transfer*

The final element of an avoidance claim under § 548(a) is a showing that the transfer was "fraudulent" as defined in the statute. "Under 11 U.S.C. § 548, there are two types of fraudulent transfer claims: actual fraud and constructive fraud." *In re XYZ Options, Inc.*, 154 F.3d 1262, 1267 (11th Cir. 1998). Actual fraud is established under § 548(a)(1)(A) by showing that the transfer was made by the debtor with the actual intent to hinder, delay, or defraud a creditor, and constructive fraud is established under § 548(a)(1)(B) by showing that the debtor received less than reasonably equivalent value in exchange for the transfer and that the debtor was insolvent at the time of the transfer or thereby became insolvent. *See In re Enron Corp.*, 295 B.R. 21, 27 (S.D.N.Y. 2003); *In re Jones*, 304 B.R. 462, 473 (Bankr. N.D. Ala. 2003). Plaintiff contends that the transfer from Debtor to defendant is avoidable under both theories.

### a.   *Actual Fraud*

Plaintiff contends that the transfer from Debtor to defendant amounted to actual fraud under § 548(a)(1)(A). Under this provision, the trustee may avoid a transfer made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A).

In making his argument, however, plaintiff points to no independent evidence in the record establishing that the transfer amounted to actual fraud under § 548(a)(1)(A). Rather, plaintiff relies solely on the Bankruptcy Court's finding, made in the context of denying

13

petitioner discharge under § 727, that the transfer was fraudulent. The Bankruptcy Court concluded that the transfers to defendant and to the corporation owned by Debtor's son were made with intent to hinder, delay, or defraud creditors because several badges of fraud were present, including the gratuitous nature of the transfers, the depletion of Debtor's assets, and Debtor's failure to disclose the transfers in his petition. *See Cutler*, 291 B.R. at 723.

Plaintiff is not entitled to summary judgment on his claim of actual fraud. Plaintiff bears the burden of pointing to evidence in the record to establish that there is no genuine issue of material fact with respect to whether the transfer was actually fraudulent under § 548(a)(1)(A). The Bankruptcy Court's findings can constitute such evidence only if defendant is collaterally estopped from challenging those findings in this adversary proceeding. Even assuming that all of the elements of collateral estoppel are satisfied, it is well established that "collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair' opportunity to litigate the claim or issue." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480-81 (1982). Thus, collateral estoppel may not be invoked against one who was not a party to the prior proceeding or in privity with a party to the prior proceeding. *See Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798 (1996).

Here, defendant was not a party to the discharge proceeding in the Bankruptcy Court, nor is there any evidence showing that defendant was in privity with Debtor. Thus, the Bankruptcy Court's determination that the transfer was made with intent to hinder, delay, or defraud creditors for purposes of nondischargeability under § 727 does not estop defendant from arguing the contrary in this adversary proceeding under § 548. *See In re Graven*, 138 B.R. 587, 589-90 (Bankr. W.D. Mo. 1992), *aff'd on other grounds*, 64 F.3d 453 (8th Cir. 1995);

14

*cf. In re Pizante*, 186 B.R. 484, 490 (B.A.P. 9th Cir. 1995) (finding of actual fraud in avoidance action under § 548 did not collaterally estop debtor from challenging fraud finding in discharge proceeding under § 727 where debtor was not a party to the avoidance action and did not have a full and fair opportunity to litigate the matter). Because plaintiff has pointed to no evidence to demonstrate actual fraud beyond the Bankruptcy Court's findings, and because those findings have no preclusive effect here, plaintiff is not entitled to summary judgment on his actual fraud claim under § 548(a)(1)(A).

### b. Constructive Fraud

Plaintiff may still be entitled to summary judgment, however, if he can show that the transfer was constructively fraudulent under § 548(a)(1)(B). To establish constructive fraud, plaintiff must show that (1) the transfer was made for less than "reasonably equivalent value"; and (2) Debtor was insolvent at the time of the transfer or became insolvent thereby, or was undercapitalized. *See In re Southern Textile Knitters*, 65 Fed. Appx. 426, 436 (4th Cir. 2003); *In re Tri-Star Technologies Co., Inc.*, 260 B.R. 319, 323 (Bankr. D. Mass. 2001); *cf. BFP*, 511 U.S. at 535.

#### (i) Reasonably Equivalent Value

"The term 'reasonably equivalent value' is not defined in the bankruptcy code although § 548(d)(2)(A) defines 'value' as 'property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or a relative of the debtor.'" *In re Guerrera*, 225 B.R. 32, 36 (Bankr. D. Conn. 1998). "The determination of whether reasonably equivalent value was received by the debtor requires the court to compare what was given with what was received." *Guerrera*, 225 B.R. at 36; *see*

15

*also, In re Fordu*, 201 F.3d 693, 707 (6th Cir. 1999) (citing *Barber v. Golden Seal Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997)); *In re Gerdes*, 246 B.R. 311, 313 (S.D. Ohio 2000); *In re Newtowne, Inc.*, 157 B.R. 374, 378-79 (Bankr. S.D. Ohio 1993); *In re Grabill Corp.*, 121 B.R. 983, 994 (Bankr. N.D. Ill. 1990).

Plaintiff contends that Debtor did not receive reasonably equivalent value because the transfer was to pay an antecedent debt of Debtor's corporation, and not Debtor himself, to defendant. There is no dispute that this was the case, nor that Debtor had no individual liability to defendant. *See* Cutler Aff., ¶ 8; Pl.'s Br., Ex. 5, at 4 (defendant's response to plaintiff's interrogatory No. 2). "When a debtor pays the debts of a third-party, the debtor generally receives little or no value in return." *Gerdes*, 246 B.R. at 313; *see also, In re Minnesota Utility Contracting, Inc.*, 110 B.R. 414, 419-20 (D. Minn. 1990); *In re Galbreath*, 286 B.R. 185, 207 (Bankr. S.D. Ga. 2002); *In re Computer Universe, Inc.*, 58 B.R. 28, 30 (Bankr. M.D. Fla. 1986). Thus, "the payment of third-party debts by a debtor is generally avoidable by the trustee. Based on this concept, courts have avoided payments by a debtor to pay a third-party corporation's debts." *Gerdes*, 246 B.R. at 314 (citation omitted); *see also, In re Fox Bean Co., Inc.*, 287 B.R. 270, 281 (Bankr. D. Idaho 2002); *Computer Universe*, 58 B.R. at 30.

Notwithstanding this rule, defendant argues that Debtor received indirect economic benefits from the transfer sufficient to constitute reasonably equivalent value. "While courts have recognized that a debtor's payment of third-party debts usually carries no direct economic benefit for the debtor, courts have been willing to consider indirect benefits received by a debtor if those benefits are fairly concrete." *Gerdes*, 246 B.R. at 314; *see also, Fox Bean Co.*, 287 B.R. at 281. Thus, courts have found an indirect economic benefit sufficient to

16

constitute reasonably equivalent value where "the debtor receives the use of the goods or services for which the debtor paid," and where "the debtor and the third-party for whom the debt is paid are so related and share such an identity of interests that the benefits of one will benefit the other to some degree." *Gerdes*, 246 B.R. at 314; *see also, Newtowne*, 157 B.R. at 379.

Two important points about indirect benefits must be emphasized. First, "any indirect benefit received must be 'fairly concrete.'" *Guerrera*, 225 B.R. at 36 (quoting *In re Image Worldwide, Ltd.*, 139 F.3d 574, 578 (7th Cir. 1998); *see also, Minnesota Utility*, 110 B.R. at 420; *Gerdes*, 246 B.R. at 313; *Grabill*, 121 B.R. at 995. Second, "[i]n order to be evaluated for reasonable equivalency, indirect benefits must be *economic* benefits." *Galbreath*, 286 B.R. at 208 n.15 (emphasis in original); *see also, Newtowne*, 157 B.R. at 379; *Grabill Corp.*, 121 B.R. at 995 ("The test is the measure of the economic benefit that accrues to the debtor.").

Defendant advances essentially three bases on which Debtor can be deemed to have received a reasonably equivalent indirect benefit from the transfer. First, defendant contends that Debtor, as the sole shareholder, "had a vested interest in ensuring that progress payments were made by PED to its subcontractors and that the project was completed properly[, otherwise] . . . contractors, such as Hicks, would have abandoned the project and PED would have been subject to litigation." Thus, defendant argues, debtor "received a reasonably equivalent value in exchange for the transfer given that it maintained the viability of PED, the success of which was the Debtor's own reward." Def.'s Br., at 13. Second, defendant argues that Debtor received a benefit because "George Cutler and PED apparently commingled their liabilities and assets to the extent that an alter ego relationship can be established to have

17

existed." *Id.* at 13, n.5. Finally, defendant contends that in the absence of the transfer Debtor in fact would have been personally liable for the debt under the Michigan Builder's Trust Fund Act (MBTFA).

Defendant's first argument provides no basis for concluding that Debtor received reasonably equivalent value. If it did, then any transfer by a Debtor to pay the debts of his wholly owned corporation would constitute reasonably equivalent value. As explained above, however, this is not the law. Rather, the law presumes that Debtor and his corporation are separate entities. Nor does the fact that Debtor ultimately benefitted from the solvency of his corporation, standing alone, support a finding that Debtor himself received a reasonably equivalent value in exchange for the transfer. There is no evidence that PED returned an equivalent amount to Debtor's personal finances which caused the bankruptcy estate to suffer no depletion of assets as a result of the transfer. *See Galbreath*, 286 B.R. at 211.[6]

Defendant's third argument fares no better. Defendant argues that, in the absence of payment from PED to defendant, Debtor would have been liable under the Michigan Builders' Trust Fund Act, MICH. COMP. LAWS §§ 570.151 *et seq*. In support of his claim defendant relies on *Gerdes, supra*. In that case, the bankruptcy court found that the debtor's payment of a corporate debt was nonetheless supported by reasonably equivalent value because, had the debt not been paid, the debtor could have been held individually liable under state law for

---

[6]I note that although plaintiff bears the ultimate burden of proof on the issue, where as here a defendant contends that an indirect economic benefit constitutes reasonably equivalent value the defendant has the burden of quantifying the benefit received by the debtor. *See In re Wes Dor Inc.*, 996 F.2d 237, 243 (10th Cir. 1993); *In re Richards & Conover Steel Co.*, 267 B.R. 602, 614 (B.A.P. 8th Cir. 2001); *In re Dayton Title Agency Inc.*, 292 B.R. 857, 875 (Bankr. S.D. Ohio 2001). Defendant has not attempted to quantify the value of any benefit flowing to Debtor solely as a result of his ownership of PED.

18

violations of Ohio's Consumer Sales Practices Act and sales tax statutes. *See Gerdes*, 246 B.R. at 314. Defendant's reliance on *Gerdes* is misplaced, however, because here there is simply no indication that Debtor faced any liability under the MBTFA.

Section 1 of the MBTFA provides that "[i]n the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes." MICH. COMP. LAWS § 570.151. The Act establishes criminal penalties for its violation, *see* MICH. COMP. LAWS § 570.152, and has also been interpreted to provide for a civil cause of action. *See DiPonio Constr. Co, Inc. v. Rosati Masonry Co., Inc.*, 246 Mich. App. 43, 48, 631 N.W.2d 59, 62 (2001); *Weathervane Window, Inc. v. White Lake Constr. Co.*, 192 Mich. App. 316, 325, 480 N.W.2d 337, 341 (1991). Further, as defendant correctly notes, an individual corporate officer of a contractor may be liable for violations of the MBTFA in which the officer participates. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (applying the MBTFA); *People v. Brown*, 239 Mich. App. 735, 740-41, 610 N.W.2d 234, 238 (2000).

However, not every failure by a contractor to pay a subcontractor amounts to a violation of the MBTFA. The Act is designed not to insure payment in all instances, but rather to insure that funds dedicated to a particular project are used by the contractor for purposes related to that project, and not for other purposes. Thus, a cause of action under the MBTFA requires a showing, *inter alia*, that the defendant retained or used the funds paid into the trust for a

19

purpose other than to first pay the laborers and subcontractors performing work on the
project. *See H.A. Smith Lumber & Hardware Co. v. Decina*, 258 Mich. App. 419, 426, 670
N.W.2d 729, 734 (2003). *See generally, DiPonio Constr.*, 246 Mich. App. at 47-50, 631
N.W.2d at 61-63; *People v. Whipple*, 202 Mich. App. 428, 432-33, 509 N.W.2d 837, 840
(1993); *Weathervane Window*, 192 Mich. App. at 325, 480 N.W.2d at 341 (each discussing the
purpose and operation of MBTFA). In other words, the Act only guarantees that funds devoted
to a project will be spent on that project; it does not guarantee that all who work on the project
will be paid regardless of the amount of funds deposited into the building contract fund. As
the Michigan Court of Appeals has explained: "If the money received by the contractor in fact
was used to pay laborers, subcontractors, or materialmen on the specific job in question, the
purpose of the act is carried out and no remedies under the act, civil or criminal, are available
to other, unpaid laborers, subcontractors, or materialmen." *James Lumber Co., Inc. v. J &
S Constr., Inc.*, 107 Mich. App. 793, 795-96, 309 N.W.2d 925, 926-27 (1981) (per curiam)
(citing *National Bank of Detroit v. Eames & Brown, Inc.*, 396 Mich. 611, 242 N.W.2d 412
(1976)); *see also, Koppers Co., Inc. v. Garling & Longlois*, 594 F.2d 1094, 1099-1100 (6th Cir.
1979) ("[T]he purpose of the Act is not . . . simply to insure that subcontractors get their
money."); *W.S. Townsend v. Nye*, No. 235396, 2003 WL 21508463, at *1-*2 (Mich. Ct. App.
July 1, 2003).[7]

---

[7] *James Lumber* also addressed an issue regarding the burden of proof in MBTFA cases. This
aspect of *James Lumber* has been criticized and rejected by Judges of this Court. *See In re Kriegish*, 275 B.R.
838 (E.D. Mich. 2002); *In re Hickey*, No. 98-CV-75590, 1999 WL 33313133 (E.D. Mich. Sept. 30, 1999);
*In re Little*, 163 B.R. 497 (Bankr. E.D. Mich. 1994). This cases focus solely on the burden of proof issue,
and do not call into question the point for which *James Lumber* is cited above.

Here, defendant alleges nothing more than, had the transfer not occurred, Debtor's corporation may not have been able to satisfy its debt to defendant. However, there is nothing in the record, nor is there even an allegation by defendant, that PED or Debtor had misappropriated funds held in trust pursuant to the MBTFA. Thus, there is no basis to conclude that Debtor's transfer resulted in an exchange of reasonably equivalent value because it freed him from potential liability under the MBTFA.[8] Accordingly, defendant's third argument for finding reasonably equivalent value is unavailing.

However, there is a genuine issue of material fact with respect to defendant's second argument, *i.e.*, whether Debtor and PED were so intertwined as to be treated as one. As noted above, courts have found payment of third-party debts to constitute reasonably equivalent value "when the debtor and the third-party for whom the debt is paid are so related and share such an identity of interests that the benefits of one will benefit the other to some degree." *Gerdes*, 246 B.R. at 314; *see also, Newtowne*, 157 B.R. at 379; *In re Pembroke Dev. Corp.*, 124 B.R. 398, 400 (Bankr. M.D. Fla. 1991). Thus, "[w]here there is sufficient commingling of the affairs of a debtor with the affairs of a third party to establish 'identity of interest', the Court may, under compelling circumstances, ignore the separate existence of two debtors[.]" *In re Nelson*, 24 B.R. 701, 702 (Bankr. D. Or. 1982).

---

[8]Indeed, it is not clear that, even assuming that Debtor faced potential liability under the MBTFA, his payment of PED's debt to defendant from personal funds would have avoided that liability. As explained above, the MBTFA essentially prohibits the commingling of funds, or the use of funds dedicated to one project for other purposes. Debtor's payment of the debt from personal funds, although it may have made it less likely that defendant would sue him, would not have cured the initial breach of the MBTFA, which was not the failure to pay in itself but rather the failure to use building trust funds for purposes of the project. Indeed, such a construction of the statute would be contrary to the express purpose of the Act, which is to prevent precisely this type of shuffling of construction funds. *See DiPonio*, 246 Mich. App. at 49, 631 N.W.2d at 63.

21

Here, there is a genuine issue of material fact with respect to whether Debtor and PED actually had a separate existence. As defendant points out, Debtor's bankruptcy schedule includes a number of debts which appear to be corporate debts of PED rather than individual debts, and in Schedule H Debtor listed PED as a codebtor on numerous such debts. These statements in the petition suggest that Debtor and PED "commingled their liabilities and assets to the extent that an alter ego relationship can be established," and that "Mr. Cutler was simply not sophisticated enough to understand the difference between his personal interests and his company's interests." Def.'s Br., at 13 n.5. Such a finding, if true, would establish such an "identity of interest" that the forgiveness of PED's debt to defendant would constitute reasonably equivalent value for the transfer. It may not, in the end, be the case that such an identity of interest existed at the time of the transfer. However, it cannot be said on this record that plaintiff has sustained his burden of demonstrating that there is no genuine issue of material fact on this issue. Accordingly, the Court should deny plaintiff's motion for summary judgment on this basis.[9]

### (ii) Insolvency

The insolvency prong of the constructive fraud test under § 548(a)(1)(B) may be established in any of three ways. Plaintiff's motion implicates only the first of these, and requires the Court to consider whether Debtor "was insolvent on the date that [the] transfer

---

[9]This conclusion is not inconsistent with my earlier rejection of defendant's first argument. That argument was based solely on the fact of Debtor's ownership of the corporation, and attempted to argue that this fact alone meant that any benefit received by the corporation would also be received by Debtor. The second argument, however, is significantly different. It is based on the argument that Debtor and the corporation were in actuality one and the same-with commingled assets and liabilities, and not on the assumption that any benefit to the corporation would flow through to Debtor solely based on his ownership.

22

was made . . . , or became insolvent as a result of [the] transfer."  11 U.S.C. §
548(a)(1)(B)(ii)(I).  "To determine if an entity is insolvent for purposes of avoiding a fraudulent
conveyance, courts must utilize the balance sheet test under section 101(32), evaluating
whether the entity's 'financial condition [is] such that the sum of such entity's debts is greater
than all of such entity's property, at a fair valuation . . . ," exclusive of property fraudulently
transferred."  *In re WRT Energy Corp.*, 282 B.R. 343, 368 (Bankr. W.D. La. 2001) (quoting 11
U.S.C. § 101(32)) (alterations in original); *see also, Fox Bean Co.*, 287 B.R. at 282; *Newtowne*,
157 B.R. at 380.  "The relevant solvency valuation date for avoidance purposes is the date of
the challenged transfer."  *WRT Energy Corp.*, 282 B.R. at 368.  Thus, "[e]vidence of insolvency
on the date of the alleged [transfer] is the critical issue and proof of insolvency on any other
date is insufficient."  *In re Strickland*, 230 B.R. 276, 283 (Bankr. E.D. Va. 1999).

Here, genuine issues of material fact exist with respect to whether Debtor was insolvent
on the date of the transfer to defendant, or was rendered insolvent by virtue of the transfer.
Plaintiff points to three items of evidence which it contends establish Debtor's insolvency on
the date of the transfer. None of these, however, establishes the absence of a genuine issue
of material fact with respect to the insolvency issue.

First, plaintiff points to Debtor's 2001 tax return. *See* Pl.'s Mot., Ex. 9. The tax return
provides no evidence that Debtor's liabilities exceeded his assets on the date of the transfer.
Rather, the return shows that Debtor earned income of $36,630 after accounting for business
expenses. No schedules or other documentation in the tax return addresses Debtor's net
worth, and nothing in the return tends to show that Debtor was insolvent. *Cf. In re Flutie N.Y.
Corp.*, 310 B.R. 31, 52 (Bankr. S.D.N.Y. 2004) (tax returns were evidence of insolvency where

23

the returns and schedules showed that the corporate-debtor had negative retained earnings, negative stockholder equity, and substantial income losses in five of the six relevant tax years).

Plaintiff next points to Debtor's affidavit, in which he state that at the time of the transfer he was unable to pay his debts as they became due and had debts which exceed the fair market value of his assets. *See* Cutler Aff., ¶¶ 3-4, 7. At trial in the discharge proceeding, however, Debtor testified that on May 7, 2001, his bills were "caught up, basically." *See* Def.'s Br., Ex. 3. This discrepancy "creates an issue of fact which should go to the weight of the evidence and is up to the trier of fact to determine." *City of Chanute, Kan. v. Williams Natural Gas Co.*, 743 F. Supp. 1437, 1449 (D. Kan. 1990), *aff'd*, 955 F.2d 641 (10th Cir. 1992); *see also, Better Environment, Inc. v. ITT Hartford Ins. Group*, 96 F. Supp. 2d 162, 168 (N.D.N.Y. 2000).

This leaves only Debtor's bankruptcy petition and schedules. Although these documents are sufficient to establish that Debtor was insolvent on the petition date, they are insufficient to establish as a matter of law that Debtor was insolvent on the date of the transfer. As noted above, the critical date for purposes of § 548(a)(1)(B)(ii)(I) is the date of the transfer. *See Strickland*, 230 B.R. at 283. Thus, while a bankruptcy petition and the schedules attached thereto may be considered in determining the insolvency issue, *see Mitchell v. Western Data Processing Servs. Corp.*, 75 B.R. 825, 828 (D.P.R. 1987), without more they are insufficient to establish insolvency on the date of the transfer. *See Burdick v. Lee*, 256 B.R. 837, 840 (D. Mass. 2001); *In re Annis*, 78 B.R. 962, 967 & n.16 (Bankr. W.D. Mo. 1987). Here, there is no evidence regarding Debtor's financial position as of the date of the transfer, nor is there any evidence that his financial position was the same on the petition date as it was nearly eight

24

months earlier at the time of the transfer. Thus, evidence of his insolvency on the petition date

is insufficient to establish that Debtor was insolvent at the time of the transfer. *See Strickland*,

230 B.R. at 284; *In re Washington Bancorporation*, 180 B.R. 330, 333-34 (Bankr. D.D.C.

1995) (citing cases). Accordingly, plaintiff is not entitled to summary judgment on this aspect

of his fraudulent conveyance claim. *See generally, In re KZK Livestock, Inc.*, 290 B.R. 622,

626 (Bankr. C.D. Ill. 2002) ("The determination of insolvency generally presents complex

factual determinations that seldom lend themselves to disposition by summary judgment.").

D.     *Defendant's Liability*

The final issue before the Court is whether, assuming plaintiff establishes that a

fraudulent transfer occurred, plaintiff may hold defendant liable for repayment of the

$100,000.00 transfer. This issue is governed by § 550, which in relevant part provides:

> (a) Except as otherwise provided in this section, to the extent that a
> transfer is avoided under section . . . 548 . . . of this title, the trustee may
> recover, for the benefit of the estate, the property transferred, or, if the court
> orders, the value of such property, from–
>> (1) the initial transferee of such transfer or the entity for whose
>> benefit such transfer was made; or
>> (2) any immediate or mediate transferee of such initial transferee.
> (b) The trustee may not recover under section (a)(2) of this section from–
>> (1) a transferee that takes for value, including satisfaction or
>> securing of a present or antecedent debt, in good faith, and without
>> knowledge of the voidability of the transfer avoided; or
>> (2) any immediate or mediate good faith transferee of such
>> transferee.

11 U.S.C. § 550. By its terms, § 550 establishes an important distinction between immediate

and subsequent transferees.

Under § 550(a), both immediate and subsequent transferees are liable for repayment

of a voidable transfer. "Section 550(b), however, sets a dividing line of vulnerability at a point

25

along [the] chain [of transfers]. Simply stated, 'under § 550(b) a mediate or immediate transferee receives protection if it has taken for value in good faith without knowledge of the voidability of the transfer. However, an initial transferee receives no such protection.'" *In re Circuit Alliance, Inc.*, 228 B.R. 225, 231-32 (Bankr. D. Minn. 1998) (quoting *In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d 712, 721 (6th Cir. 1992)). In other words, "the initial transferee of an avoided transfer is strictly liable to the estate, whether it colluded with the debtor or was an innocent and unwitting recipient," whereas "[a] subsequent transferee, mediate or immediate, may avoid liability upon a showing of status analogous to that of a bona fide purchaser." *Id.* at 232; *see also, Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 312 (Bankr. S.D.N.Y. 1999); *In re M. Blackburn Mitchell Inc.*, 164 B.R. 117, 125 (Bankr. N.D. Cal. 1994).

Here, there is no question that the funds flowed from Debtor and his wife, as generated by the refinancing transaction, through the title company to defendant; there were no other parties to whom the funds were transferred along the way. Thus, either the title company or defendant must be the initial transferee under § 550(a). Defendant contends that is was not the initial transferee and thus may invoke the good faith defense established in § 550(b). Specifically, defendant argues that it received the funds from Philip R. Seaver Title Company, and thus is not the initial transferee. I disagree, and conclude that defendant was the initial transferee and thus is strictly liable under § 550(a) regardless of its good faith.

Neither § 550 specifically nor the Code generally defines "initial transferee." However, the courts are unanimous that a mere financial conduit for funds is not an "initial transferee" under § 550. *See In re Ogden*, 314 F.3d 1190, 1196 (10th Cir. 2002); *In re Finley, Kumble*

26

*Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57-58 (2d Cir. 1997); *Securities Investor Protection Corp.*, 234 B.R. at 312-13 (citing cases). Under this exception, "[f]inancial conduits are those entities that do not exercise 'dominion and control' over the funds." *Ogden*, 314 F.3d at 1196; *see also, In re Southeast Hotel Properties Ltd. Partnership*, 99 F.3d 151, 154-55 (4th Cir. 1996); *In re Reeves*, 65 F.3d 670, 676 (8th Cir. 1995). Mere conduits generally "'hold transferred funds via escrow, trust, or deposit, and do so only in the status of commercial or professional intermediaries for the parties that actually hold or receive a legal right, title, or interest.'" *In re Toy King Distribs., Inc.*, 256 B.R. 1, 144 (Bankr. M.D. Fla. 2000) (quoting *Circuit Alliance*, 228 B.R. at 233). Typical types of conduits are commercial banks, steamship agents, real estate escrow and title companies, brokers, and attorneys. *See id.* at 145. The inquiry focuses on the actions of the first recipient with respect to the transfer at issue, not with respect to other transactions. Thus, "a commercial entity that, in the ordinary course of its business, acts as a mere conduit for funds and performs that role consistent with its contractual undertaking in respect of the challenged transaction, is not an initial transferee within the meaning of § 550(a)(1)." *Finley*, 130 F.3d at 58; *see also, Toy King Distribs.*, 256 B.R. at 144-45 ("Typically, a conduit is a commercial enterprise that has handled the debtor's transfer to a third party consistent with its normal handling of other commercial transactions.").

Here, there is no question of material fact that the title company was a mere financial conduit, and thus does not qualify as an initial transferee under § 550(a)(1). There is no evidence that the title company had any legal entitlement to the funds generated by the refinancing transaction. Rather, the title company merely disbursed, as an escrow agent, the

27

funds as directed by Debtor and his wife. The title company was acting as a quintessential financial conduit. *See In re Williams*, 104 B.R. 296, 299 (Bankr. C.D. Cal. 1989); *In re Moskowitz*, 85 B.R. 8, 10-11 (E.D.N.Y. 1988). Because the title company is a mere conduit, it is removed from the chain and defendant is the initial transferee for purposes of § 550(a)(1). *See In re Florida Hotel Properties Ltd. Partnership Plan Trust Agreement*, No. 97-2583, 1998 WL 957455, at *3-*4 (4th Cir. Sept. 22, 1998); *Moskowitz*, 85 B.R. at 11; *see also, Circuit Alliance*, 228 B.R. at 235 ("Applying the 'mere conduit' exception takes the holder of that status out of the chain."). And, as explained above, this renders defendant strictly liable for repayment of the avoided transfer.

Throughout its response to plaintiff's motion, defendant argues that it would be inequitable to require it to repay the transfer because it took in good faith, without knowledge of the voidability of the transfer, and in satisfaction of an existing obligation. However, as the Supreme Court has explained, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). "The language of § 550 is clear that the totally innocent *initial* transferee is nevertheless liable for a fraudulent transfer." *In re M. Blackburn Mitchell Inc.*, 164 B.R. at 131. Thus, the Court may not use its equitable powers to avoid the liability determination resulting from an application of the plain language of § 550. *See In re Hurtado*, 342 F.3d 528, 534 n.2 (6th Cir. 2003); *In re Meridith Hoffman Partners*, 12 F.3d 1549, 1557 (10th Cir. 1994); *In re C-L Cartage, Inc.* 899 F.2d 1490, 1494 (6th Cir. 1990).

E.   *Narrowing the Issues under Rule 56(d)*

For the reasons explained above, I recommend that the Court conclude that plaintiff

28

is not entitled to summary judgment because there remain genuine issues of material fact with respect to the fraudulent transfer element of plaintiff's avoidance claim under § 548. Specifically, there remain genuine issues of material fact with respect to whether the transfer was actually fraudulent under § 548(a)(1)(A), and with respect to whether the transfer amounted to constructive fraud under both elements of § 548(a)(1)(B) (reasonably equivalent value and insolvency).

However, as also discussed above, plaintiff has demonstrated the absence of a genuine issue of material fact on several aspects of his claim, namely that (a) property of the estate was transferred, (b) the transfer occurred within the one-year preceding the filing of the bankruptcy petition, and (c) defendant is strictly liable for repayment of the transfer under § 550(a) if it is in fact found to be fraudulent. Pursuant to FED. R. CIV. P. 56(d), the Court should deem these matters established as a matter of law. As several courts have explained, Rule 56(d) "provides a procedural device whereby the Court may salvage much labor from a denial of summary judgment, narrowing the factual issues for trial." *URI Cogeneration Partners, L.P. v. Board of Governors for Higher Educ.*, 915 F. Supp. 1267, 1279 (D.R.I. 1996); *see also, First Nat'l Bank v. Federal Deposit Ins. Corp.*, 977 F. Supp. 1051, 1056 (S.D. Cal. 1997); *Archer-Daniels-Midland Co. v. Phoenix Assurance Co. of N.Y.*, 936 F. Supp. 534, 537 (S.D. Ill. 1996); *In re S.N.A. Nut Co.*, 210 B.R. 140, 143 (Bankr. N.D. Ill. 1997). Thus where, as here, a party is not entitled to summary judgment on a claim but has demonstrated an absence of genuine issues of material fact with respect to certain elements under the standards of Rule 56, the Court may enter an order deeming those matters established and narrowing trial to those issues for which a genuine issue of material fact remains. *See URI Cogeneration*, 915 F. Supp. at 1279. For

29

the reasons explained throughout this Report, the Court should enter such an order here.

F.    *Conclusion*

In view of the foregoing, the Court should deny plaintiff's motion for summary judgment. However, pursuant to Rule 56(d), the Court should enter an order deeming established as a matter of law the following elements of plaintiff's fraudulent transfer claim: (1) whether property of the estate was involved; (2) the timing of the transfer; and (3) defendant's liability for repayment under § 550(a). The Court's order should therefore limit further proceedings in this matter to the following issues, with respect to which a genuine issue of material fact remains: (1) whether the transfer was actually fraudulent under § 548(a)(1)(A); (2) whether the transfer was constructively fraudulent under § 548(a)(1)(B), and more specifically (a) whether the transfer was for less than reasonably equivalent value under § 548(a)(1)(B)(i) and (b) whether Debtor was insolvent at the time of the transfer under § 548(a)(1)(B)(ii).

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370,

30

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: 9/1/04

31

## CERTIFICATION OF SERVICE

I, the undersigned, hereby certify that I have on the 1st day of September, 2004, mailed copies of the attached REPORT AND RECOMMENDATION to the following parties:


WILLIAM L. HUEBNER, ESQ.
24901 NORTHWESTERN HWY
SUITE 444
SOUTHFIELD, MI 48075-2203

DAVID A. LERNER, ESQ.
38505 WOODWARD AVENUE
SUITE 2000
BLOOMFIELD HILLS, MI 48304-5097

SCOTT H. SIRICH, ESQ.
38505 WOODWARD AVENUE
SUITE 2000
BLOOMFIELD HILLS, MI 48304-5097

G. K. Wilson, Judicial Assistant
Magistrate Judge R. Steven Whalen